UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRENDA P. DELGADO, | CASE NO. 3:03 CV 1652(MRK) |
| Plaintiff, | CASE NO. 3:03 CV 1653(MRK) |
| v. | |
| STATE OF CONNECTICUT DEPARTMENT OF PUBLIC HEALTH; JOXEL GARCIA, Commissioner, Department of Public Health; WARREN WALSHBERGER, aka WARREN WOLKSCHALAGER, Chief of Staff; ELEANOR KRAMER, Bureau Chief; ARDELL WILSON, Bureau Chief; DENNIS WILLIAMS, Human Resources Manager; GARY DEWITT, Director, Contracts Administration; JOAN LEAVITT, Public Health Services Manager; MARY LOU FLEISHNER, Director, Environmental Epi.; JOSEPH FERGEOUN, Fiscal Administrative Supervisor; BETH WEINSTEIN, Director, AIDS Division; RICHARD MELCHRIET, Medical Associate; TOM CARSON, Director, Human Resources; Defendants. | JULY 4, 2004 |

AMENDED COMPLAINT

A. PARTIES

1. Plaintiff BRENDA P. DELGADO is a citizen of Connecticut who presently resides at 46 Silo Way, Bloomfield, CT 06002.

2. Defendant STATE OF CONNECTICUT DEPARTMENT OF PUBLIC HEALTH (DPH), whose address is 410 Capitol Ave, Hartford, CT 06134, is a state health agency.

3. Defendant JOXEL GARCIA resides at 64 Brookridge Dr, Avon, CT 0600l, and was employed as Commissioner of Public Health.

4. Defendant WARREN WOLLSCHLAGER is or was employed as Chief of Staff, Office of the Commissioner, DPH.

5. Defendant ELEANOR KRAMER, also known as ELISE KRAMER, is or was employed as Chief of Staff, Office of the Commissioner, and Bureau Chief, Bureau of Administrative Services, DPH.

6. Defendant ARDELL WILSON is or was employed as Bureau Chief, Bureau of Community Health, DPH.

7. Defendants DENNIS WILLIAMS and JOAN LEAVITT both reside at 6 Fuller Rd, Marlborough, CT 06447; WILLIAMS is or was employed as Human Resources Manager, DPH; LEAVITT is or was employed as Public Health Services Manager, DPH.

8. Defendant GARY DEWITT resides at 216 Duncaster Rd, Bloomfield, CT 06002 and is or was employed as Director, Contracts Administration, DPH.

9. Defendant MARY LOU FLEISHNER is or was employed as Director, Environmental Epidemiology, Division of Environmental Occupational Health, DPH.

10. Defendant JOSEPH FORGIONE resides at 163 Barbour Rd, New Britain, CT 06053 and is or was employed as Fiscal Administrative Supervisor, DPH.

11. Defendant BETH WEINSTEIN resides at150 Sheldon Hill Dr, West Hartford, CT 06107 and is or was employed as Director, AIDS Division, DPH.

12. Defendant RICHARD MELCHREIT is or was employed as Medical Associate, Bureau of Community Health, Division of Infectious Diseases, DPH.

13. Defendant TOM CARSON resides at 85 Ridgewood Rd, West Hartford, CT 06107 and is or was employed as Director, Human Resources, DPH.

14. Each natural person Defendant is a citizen of Connecticut and is or was employed at 410 Capitol Ave, Hartford, CT 06134.

15. At the time the claims alleged in this Amended Complaint arose, each natural person Defendant was acting under color of state law.

16. Each natural person Defendant, as an individual and in his/her official role, responsibilities and duties, acted as an official of Defendant DPH and a representative of the Commissioner of Public Health during the course of all facts and circumstances alleged in this Amended Complaint.

17. Each natural person Defendant is being sued in his/her official and individual capacities.

18. Defendant DPH is liable for the acts or omissions of each natural person Defendant.

## B. JURISDICTION

Jurisdiction is asserted pursuant to 28 U.S.C. Secs. 1331, 1343(a)(3) and 1367; 42 U.S.C. Secs. 1981, 1983, 1985, 1986 and 1988; the Civil Rights Act of 1991, as amended; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e et seq., for employment discrimination on the basis of race, color, religion, sex or national origin.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. Sec. 2000e-5(f).  Equitable and other relief is sought under 42 U.S.C. Sec. 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981a.

## C. NATURE OF THE CASE

This claim involves violations of the Civil Rights Acts of 1964 (employment discrimination) and 1991 (civil rights).  Plaintiff was denied paid educational leave based on discrimination on account of race, color or national origin during the course of her employment. The individuals who discriminated against her and denied her educational leave also conspired to interfere with her civil rights and her rights under the constitution and laws of the United States and the laws of the State of Connecticut.  Additionally individuals knew of the acts of discrimination and negligently failed or refused to do anything to prevent them even though they had the power to

do so. Discriminatory acts occurred beginning July 29, 1999. After Plaintiff's original charge was filed for unlawful discriminatory practices, Plaintiff was subjected to retaliation. The retaliation was the denial of a promotional opportunity for which Plaintiff was qualified and ongoing harassment for her previous charge of unequal and unlawful treatment on account of race, color and national origin.

## D. CAUSE OF ACTION

Plaintiff alleges that the following of her constitutional, statutory or common law rights, privileges or immunities have been violated, that if relief is not granted, she will be irreparably denied said rights, privileges and immunities, and that the following facts form the basis of her allegations:

Claim I:

1. On or about July 29, 1999, Plaintiff was denied paid educational leave to complete the final course work of a Ph.D. degree. The application was submitted in May, 1999, with summer school beginning the end of May.

2. At that time, Plaintiff had been employed over 11 years at Defendant DPH.

3. A management committee convened by Defendant DPH reviewed Plaintiff's application. At that time, Defendant KRAMER was the Chief of Staff (later to be succeeded by Defendant WOLLSCHLAGER) and had oversight of the Educational Leave Committee.

4. No line staff was represented on the committee.

5. All members of the committee, Defendants DEWITT (Chair), WILLIAMS, LEAVITT, FLEISHNER and FORGIONE, were white.

6. Plaintiff had received the Educational Leave application because she had met all the criteria for paid educational leave: a. course of study directly related to the work of the bureau and would benefit agency and citizens of Connecticut; b. the leave would have no significant adverse impact on the effective performance of the bureau; c. course of study available only during employee's regular working hours; d. employee is deemed suitable based upon qualifications and performance; e. each leave does not extend beyond one academic year of study.

7. Plaintiff's supervisor, Defendant WEINSTEIN, who was at the same level as committee members, signed off on the leave application before forwarding it to the committee.

8. No additional information was requested to clarify or support anything on the application written by Plaintiff or Defendant WEINSTEIN.

9. Plaintiff had worked with, met or knew all of the committee members except for Defendant LEAVITT.

10. At a Connecticut Commission on Human Rights and Opportunities hearing on or about August 18, 2000, all committee members, after meeting and agreeing to do so, denied knowing Plaintiff or that she was a person of African origin even though she had been in management meetings with them, she had worked individually with them on certain human resource issues and they had provided feedback to Defendant WEINSTEIN regarding her excellent ability to take responsibilities in WEINSTEIN'S absence.

11. All committee members stated that they had read the application thoroughly, which was why they knew Plaintiff was not qualified; however, none of them remembered reading Black female on the application.

12. After the committee made the decision, Plaintiff offered additional information since all of the concerns had either been addressed in the application or could have been answered by Defendant WEINSTEIN or Plaintiff. It was not used for any consideration.

13. Plaintiff sent a letter explaining her dilemma to Defendants GARCIA, CARSON and DEWITT asking when was the last time a person of color had received paid educational leave and what was the makeup of each reviewing committee, both racially and organizationally.

14. Defendant WILSON called Plaintiff into WILSON'S office to give Plaintiff an oral message from Defendant GARCIA that stated: "You should stop sending memos and asking questions; the decision has been made and you will not receive any additional information on this issue. It's final; it has been denied."

15. Denial was based upon: a. job relevance; b. adverse impact on Plaintiff's office; c. too much time requested; d. Plaintiff's position was funded by federal dollars and the federal government might not want to pay for her position while she was going to school for 6 weeks; and e. the course availability during work hours.

16. Plaintiff had been working on the degree for 3 years part-time with Defendant DPH giving her a flex schedule.

17. At the hearing, Plaintiff stated that Defendant WEINSTEIN could confirm that the committee members knew Plaintiff was a person of African origin and Plaintiff had worked with them before.

18. The following day, Defendant WEINSTEIN signed an affidavit written by the office of Defendant GARCIA stating that Plaintiff did not need the degree to do Plaintiff's job. WEINSTEIN informed Plaintiff that she had signed the affidavit because a member of office of Defendant GARCIA had asked her to do so.

19.  The number of persons employed by Defendant DPH is in excess of 20.

20. By engaging in said acts or omissions, said Defendants acted in a willful, wanton or malicious manner.

21. Said Defendants thereby conspired to interfere with Plaintiff's civil rights.

22. Said Defendants violated the Civil Rights Acts of 1964 and 1991, Title VII, 42 U.S.C. Secs. 2000e et seq., 1983 and 1985, on account of Plaintiff's race, color or national origin and Plaintiff was thereby injured.


Claim II:

1-19. Paragraphs 1-19 of Claim I are hereby incorporated herein and made Paragraphs 1-19 of this Claim.

20. During the course of the discriminatory acts, the below-named Defendants had the ability and power to intervene and prevent the discriminatory practices, but neglected to prevent interference with Plaintiff's civil rights.

21. Defendant DEWITT, Chair of the Educational Leave Committee, who had presided over all of the Leave Committees, had the power as Chair to move the committee in another direction. At the hearing on or about August 18, 2000, he stated that he thought Plaintiff should have received paid educational leave, but he did nothing about it.

22. All committee members had the power to vote in the affirmative to grant paid educational leave.

23. All but one of the committee members were not forthcoming with their knowledge of having worked with Plaintiff and attended meetings with her prior to said hearing.

24. Defendant WEINSTEIN could have refused to sign the affidavit since had already signed off on the paid educational leave and supported Plaintiff's taking time off and completing her Ph.D.

25. Defendant WILSON, as the Bureau Chief, had also signed off on the paid educational leave application, but did not intervene in any way to prevent the discriminatory act.

26. Defendant GARCIA signed to deny paid educational leave without all of the information or responding to Plaintiff's memo, on an application that all of Plaintiff's supervisors had signed off on.

27. Since each committee member stated the same thing about not knowing Plaintiff, she reasonably believes and therefore alleges that the issue must have been discussed among them in a prior meeting; therefore, they are all liable for not coming forward with the truth.

28. Defendant WILLIAMS, as Human Resources Manager, certainly knew the extent of the law regarding discrimination; he was the person who provided Plaintiff with the application and advised how to fill it out; yet he said he had not met Plaintiff before.  He and Plaintiff had worked together at least a year.

29. The Defendants referred to in Paragraphs 20-28 and Defendant DPH violated the Civil Rights Acts of 1964 and 1991, Title VII, 42 U.S.C. Secs. 2000e et seq., 1983 and 1986, on account of Plaintiff's race, color or national origin and Plaintiff was thereby injured.

Claim III:

1. Plaintiff claims violations of her civil rights because of retaliation for her prior charge of discriminatory action against her by Defendant DPH.

2. Defendant DPH, through its servants and employees, denied Plaintiff an equal employment opportunity for which she was qualified based upon her years of experience and degree, and continued to harass her and create a hostile work environment.

3. The persons involved were Defendants GARCIA, WOLLSCHLAGER, WEINSTEIN, MELCHREIT, WILSON (who supervised WEINSTEIN) and CARSON.

4. On or about October 31, 2000, Defendant WEINSTEIN announced she would be leaving the AIDS Division as its Director and that Defendant MELCHREIT had been offered and declined the position.

5. Defendant WEINSTEIN had shared with Plaintiff on numerous occasions that when she left the AIDS Division as its Director, Plaintiff would be the most logical person for her replacement and she would recommend that to those making the decision.

6. Defendant WEINSTEIN stated that if any of the staff knew people interested, we should have them get in touch with her and that she and Defendant MELCHREIT had put together a list of 10 names that she was forwarding to Defendant WILSON, who was Chair of the interview committee.

7. Over Plaintiff's l2 years of employment, she was often asked to represent the AIDS Division in place of Defendant WEINSTEIN at national meetings and to assume responsibility in WEINSTEIN'S absence.

8. On or about November 16, 2000, Plaintiff sent a letter of interest to Defendants WEINSTEIN, MELCHREIT and CARSON, and requested that her name be forwarded to Defendants WILSON and GARCIA.  They had started interviewing and I had not heard from Defendant WILSON, who was chairing the interview process.  Defendant MELCHREIT was on the committee.

9. Defendant MELCHREIT accepted calls and scheduled interviews for candidates from the community who called for and received an interview.

10. On  or about February 23, 2001, Defendant MELCHREIT announced at a staff meeting that the position was closed.

11. As the only internal candidate interested and qualified for the position, Plaintiff did not receive a response to her correspondence, she was not apprised of the interview process, she was not asked to submit a resume and she was not offered an interview.

12. Plaintiff believes this discriminatory treatment was in retaliation for her previous opposition to the unlawful discriminatory treatment of her by Defendant DPH through its servants, agents and employees.

13. In or about December 2000, Defendant GARCIA agreed to meet with Plaintiff as co-chair and six other members of a statewide HIV Prevention Community Planning Group.

14. When Plaintiff arrived at the meeting in the office of Defendant GARCIA, before his arrival, she was called out of the meeting by Defendant WOLLSCHLAGER who stated, "The Commissioner determines who he wants to meet with and who he doesn't, and he does not want to meet with you. You are not wanted at the meeting."

15. Defendant WOLLSCHLAGER then followed Plaintiff back to the conference room where he stood behind her until she gathered her things to leave the meeting; the other members questioned his decision and his hostile attitude toward Plaintiff; he said he was acting on behalf of Defendant GARCIA.

16. Because of Plaintiff's charge of unlawful discrimination against Defendant DPH, she was continually harassed, humiliated and presented with offensive treatment in the day-to-day responsibilities of her job.

17. The number of persons employed by Defendant DPH is in excess of 20.

18. By engaging in said acts or omissions, said Defendants acted in a willful, wanton or malicious manner.

19. Said Defendants thereby conspired to interfere with Plaintiff's civil rights.

20. Said Defendants violated the Civil Rights Acts of 1964 and 1991, Title VII, 42 U.S.C. Secs. 2000e et seq., 1983 and 1985, on account of Plaintiff's race, color or national origin and Plaintiff was thereby injured.

Claim IV:

1-17. Paragraphs 1-17 of Claim III are hereby incorporated herein and made Paragraphs 1-17 of this Claim.

18. During the course of the discriminatory acts, the below-named Defendants had the ability and power to intervene to prevent discriminatory practices, but neglected to prevent interference with Plaintiff's civil rights.

19. Defendant GARCIA had final authority over agency decisions and could have prevented the discriminatory practices.

20. Defendant CARSON had substantial decision making authority in hiring practices.

21. Defendant WEINSTEIN had input into who her replacement should be, was aware of Plaintiff's verbal intentions as to the AIDS Director's position and could have intervened and made known her previous conversations with Plaintiff that Plaintiff was well suited for the job of AIDS Director, that Plaintiff was the best candidate to succeed her and that she would recommend Plaintiff as her first choice when she left the position.

22. None of the Defendants who received Plaintiff's letter of interest, WEINSTEIN, CARSON or MELCHREIT, responded, scheduled an interview for Plaintiff or communicated to Plaintiff directly in any way regarding the position of AIDS Director.

23. Defendant WILSON, a person with knowledge regarding Plaintiff's experience did not extend an invitation to Plaintiff to interview.

24. Community members who interviewed for the AIDS Director position stated that the office of Defendant GARCIA was advised not to interview Plaintiff because she would not follow his policy.  Plaintiff was not afforded an interview to address what his policy was and thereby answer the question herself.  Only Defendants WILSON and WOLLSCHLAGER would have had direct contact with Defendant GARCIA on the issue.

25. The practice of including internal candidates in the interview process if there was an interest was not adhered to.

26. The Defendants referred to in Paragraphs 18-25 and Defendant DPH violated the Civil Rights Acts of 1964 and 1991, Title VII, 42 U.S.C. Secs. 2000e et seq., 1983 and 1986, on account of Plaintiff's race, color or national origin and Plaintiff was thereby injured.

Claim V:

1-19. Paragraphs 1-19 of Claim I are hereby incorporated herein and made Paragraphs 1-19 of this Claim.

20-28. Paragraphs 20-28 of Claim II are hereby incorporated herein and made Paragraphs 20-28 of this Claim.

29-44. Paragraphs 1-16 of Claim III are hereby incorporated herein and made Paragraphs 29-44 of this Claim.

45-52. Paragraphs 18-25 of Claim IV are hereby incorporated herein and made Paragraphs 45-52 of this Claim.

53. Throughout the course of the discriminatory practices, Defendant DPH and each natural person Defendant in a management or supervisory position should have known of the impact and emotional distress their actions would cause.

54. Many Defendants with advances degrees know the challenges of completing course work.

55. All Defendants involved in the educational leave issue had knowledge that Plaintiff had been working on her degree for 3 years and was completing the final course work.

56. Defendant DEWITT, as Chair of the Educational Leave Committee since its inception, knew what emotional distress declining Plaintiff's application would have on her.

57. Defendant WEINSTEIN had been Plaintiff's supervisor or AIDS Director since Plaintiff had begun pursuing her education, was the person who suggested Plaintiff apply for paid educational leave and knew how important those last 6 weeks would be to Plaintiff.

58. In order to complete the program, Plaintiff had to use all of her vacation and personal time off, and to take time off without pay.

59. Dealing with all of that while maintaining supervisory oversight of a staff of 7 and a budget of over $1,000,000 caused Plaintiff severe migraine headaches.

60. As a result of the above, Plaintiff was fitted by her dentist for a mouth guard since she was grinding her teeth because of all of the stress.

61. Defendants created a work environment hostile to Plaintiff after she filed her first charge.

62. Defendant WEINSTEIN'S not making known her conversations with Plaintiff about succeeding to the AIDS Director's position caused job related stress to Plaintiff since Plaintiff knew she was qualified for the position.

63. Defendant WILSON knew of Plaintiff's qualifications since Defendant WEINSTEIN had recommended Plaintiff for a management position equivalent to that of AIDS Director, but Plaintiff was not considered for either position.

64. Defendant CARSON knew internal policy and was proactive regarding identifying viable candidates from within Defendant DPH.

65. At the meeting to which Plaintiff had been invited by or on behalf of Defendant GARCIA, Defendant WOLLSCHLAGER humiliated, belittled, berated, insulted and threatened her in front of colleagues and community members for no reason other than retaliation.

66. Defendant GARCIA claimed he did not know Plaintiff and that he would apologize for her treatment by Defendant WOLLSCHLAGER, but Defendant GARCIA never apologized verbally or in writing.

67. All of the above caused Plaintiff substantial stress and anxiety.

68. Defendants thereby negligently inflicted emotional distress on Plaintiff.

## E. PREVIOUS ADMINISTRATIVE RELIEF

1. Plaintiff previously has sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part D.

2. Plaintiff filed charges with the Equal Employment Opportunity Commission.

3. Plaintiff has exhausted available administrative remedies.

4. The U.S. Department of Justice, Civil Rights Division, issued Notice of Right to Sue letters (copies attached) which Plaintiff received on or about July 1, 2003.

## G. REQUEST FOR RELIEF

Plaintiff requests that the Court grant:

1. Pay lost as a result of failure of Plaintiff's timely appointment to the position of AIDS Director or any position containing substantially the same job specifications.

2. Monetary damages in excess of $75,000, including, but not limited to damages for emotional distress, medical bills, lost vacation and personal days, and unpaid leave days.

3. Exemplary, punitive or double damages as authorized by law.

4. Appointment to the position of AIDS Director or any position containing substantially the same job specifications.

5. Fees and costs pursuant to 42 U.S.C. Sec. 1988 or as otherwise authorized by law.

6. Attorney's fees.

7. Such other relief as may be deemed appropriate.

## H. JURY DEMAND

Plaintiff demands a trial by jury.

                                        _____
                                        RICHARD H. KOSINSKI(ct15419)
                                        Attorney for Plaintiff
                                        106 Farmington Ave, Ste 2B
                                        New Britain, CT 06053-2982
                                        V:  860-224-7115
                                        F:  860-224-7116
                                        E:  rikosin@att.net

## CERTIFICATION

I hereby certify that a copy hereof was mailed by first class mail, postage prepaid, on July 18, 2004 to AAG Edward F. Osswalt, P.O. Box 120, Hartford, CT 06141-0120.

                                        _____
                                        RICHARD H. KOSINSKI